UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN GOLDFADEN

        Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　Case No. 2:08-cv-10944
　　　　　　　　　　　　　　　　　　　　　　　　　Hon. Victoria Roberts
WYETH and
ROBERT MONOVICH,

        Defendants.
_____/

_____
MICHAEL C. CURHAN, ESQ.　　　　　　　　　Dickinson Wright PLLC
By:   Michael C. Curhan (P36354)　　　　　By:   Sheryl A. Laughren (P34697)
Attorney for Plaintiff　　　　　　　　　　　　　　　　      Sherry D. O'Neal (P62288)
3910 Telegraph Road, Suite 200　　　　　　　Attorney for Defendants
Bloomfield Hills, Michigan 48302　　　　　　　500 Woodward Avenue, Suite 4000
(248) 593-5000　　　　　　　　　　　　　　　　Detroit, MI  48226
　　　　　　　　　　　　　　　　　　　　　　　　　(313) 223-3871

_____/

# 1ST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff, SUSAN GOLDFADEN, by her attorney, Michael C. Curhan, Esq., complains against Defendants **WYETH** and **CHRIS MONOVICH** and **DEMANDS A JURY TRIAL**.

## JURISDICTION AND PARTIES

1.      This is an action to enforce Plaintiff's civil rights pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 41 USC §2000e-2(a), (m) *et seq.* ("Title VII"). and the Elliott-Larsen Civil Rights Act, MCLA §37.2801, *et seq.* ("ELCRA").

2.      Plaintiff Susan Goldfaden ("Susan") resides in Oakland County, Michigan.

3. Defendant Wyeth ("Defendant" or "Wyeth") is a New York corporation conducting business within the Eastern District of Michigan (Southern Division).

4. Defendant Robert (Chris) Monovich ("Monovich") is the Area Business Director for Wyeth and, upon information and belief, resides in Illinois.

5. The amount in controversy exceeds Seventy Five Thousand ($75,000) Dollars, exclusive of interest, costs and attorney fees, and the matter is otherwise within the jurisdiction of this Court.

6. This Court has jurisdiction pursuant to 42 USC § 2000e *et seq.*

## **BACKGROUND FACTS**

7. In March 1982, Susan began working as a medical sales representative for Ives Laboratories which, in 1986, was acquired by Wyeth.

8. From 1982 until 2006, Susan received periodic promotions, raises and awards from Defendant and its predecessor based on her performance.

9. Throughout her employment with Wyeth, Susan performed her job duties in a satisfactory and dedicated manner.

10. In December 2004, Wyeth promoted Susan to Senior District Manager.

11. Her job responsibilities as a Senior District Manager included, without limitation, the following:

    A. Training, developing and supervising a team of sales representatives in the sale of Wyeth's drugs to area physicians and hospitals; and

    B. Reporting any violation, or suspected violation, of federal law or Wyeth's policies by any Wyeth sales representative.

12. When a Wyeth sales representative meets with a prospective or current Wyeth customer, it is illegal, and a violation of Wyeth's policies and practices, for the sale representative to:

    A. Promote discuss the use of a Wyeth drug above the dosage levels approved by the Food and Drug Administration ("FDA");

    B. Promote the "off label" use of a Wyeth drug for the treatment of an illness which has not been approved by the FDA; and

    C. Promote a Wyeth drug that had not yet received FDA approval.

13. In February 2006, Susan accompanied one of her sales representatives, Sean Cleveland, on a sales call to an existing customer.

14. During the sales call, Mr. Cleveland engaged in numerous violations of federal law and Wyeth policies and practices, inter alia, by:

    A. Proactively initiating conversations with the customer regarding the a Wyeth trial drug called Exiria which had yet to receive FDA approval;

    B. Proactively initiating conversations with the customer regarding a study that was not approved by Wyeth's Copy Clearance Committee for public disclosure or discussion during a sales call; and

    C. Promoting to the customer that he prescribe dosage amounts of Effexor XR, a Wyeth drug, in excess of the FDA approved dosage levels listed in the prescribing information.

15. After the sales visit ended, Susan immediately confronted Mr. Cleveland as to why he had engaged in such blatantly illegal conduct in violation of federal law and Wyeth policies and practices.

16. Susan subsequently reported Mr. Cleveland's misconduct to her supervisor, Defendant Monovich, pursuant to Wyeth policy.

17.     Wyeth Policy 511 compels a Wyeth employee who believes another Wyeth employee violated Policy 511 to not remain silent.  As Policy 511 states in relevant part:

> Notify your supervisor or other management about compliance concerns.  If you feel the situation was not resolved or if you feel that it is in your best interest or in the best interest of the company, call the Compliance Connection.  The Compliance Office will investigate your concerns, and you do not have to give your name when you call.  **You will never be penalized for reporting compliance-related concerns**.  (Emphasis added)

18.     Wyeth purportedly conducted an investigation into Mr. Cleveland's misconduct.

19.     Sometime in March 2006, Wyeth contacted Susan regarding a pending investigation <u>against her</u> based on a claim by Mr. Cleveland that, while he admitted to violating federal law and Wyeth policy, <u>Mr. Cleveland accused Susan of instructing him to do so</u>.

20.     On March 17, 2006, Wyeth demanded Susan not speak to any one at Wyeth about the pending investigation against her.

21.     Later in March 2006, Susan attended a national sales meeting with her entire sales team but was unable to discuss Mr. Cleveland's false charges against her with any one.

22.     On April 4, 2006, Wyeth directed Susan to be interviewed by a Wyeth investigator (Rodney Jones) and a Wyeth attorney (Jeffrey Cohen) and sign a confidentiality agreement.

23.     During the April 4th interview, Susan:

      A.     Denied the charges by Mr. Cleveland;

      B.     Denied knowing Mr. Cleveland was going to violate any federal law or Wyeth policy before the February 2006 sales call;

      C.     Denied directing, or in any way assisting or encouraging, Mr. Cleveland to violate any federal law or Wyeth policy; and

      D.     Learned Mr. Cleveland also had made certain allegations against Susan relating to her management practices.

24. During the April 4th interview, Susan requested Wyeth interview the other District Managers reporting to Defendant Monovich besides Susan (e.g., Scott Friend, Max Schmaler) who were present during a 2005 talent review meeting when Defendant Monovich appeared upset with, or angry at, Susan because she did not agree with Defendant Monovich that Mr. Cleveland was a potential candidate to become a District Manager.

25. Despite Susan's request, Wyeth never interviewed the other District Managers reporting to Defendant Monovich as part of its investigation.

26. On April 13, 2006, Wyeth interviewed Susan and questioned her about statements purportedly contained in a notebook or diary Mr. Cleveland claimed to have kept while being supervised by Susan.

27. In June 2006, Wyeth (Lydia Rohn) interviewed Susan again and questioned her about certain members of Susan's sales team Susan previously had recommended for termination or demotion.

28. In June 2006, Susan informed Wyeth that its interrogating her about her previous recommendations for terminating or demoting members of her sales team:

    A. She did not understand how these recommendations were relevant to Wyeth's investigation of Mr. Cleveland's charges against her;

    B. These recommendations were approved by Defendant Monovich or her then supervisor;

    C. This interrogation indicated Defendant Monovich must have raised this issue to the investigators; and

    D. She felt Defendant Monovich now was seeking to retaliate against her for reporting Mr. Cleveland.

29. In July 2006, Wyeth contacted Susan who, again, informed Wyeth:

      A.      She believed she was being retaliated for reporting Mr. Cleveland;

      B.      Defendant Monovich had a special relationship with Mr. Cleveland and took a special interest in Mr. Cleveland's career;

      C.      Mr. Cleveland often contacted Defendant Monovich for career and leadership advise and Defendant Monovich often served as Mr. Cleveland's mentor and advocate;

      D.      The scope and focus of Wyeth's investigation had veered far away from Mr. Cleveland's bogus charges against her;

      E.      The undue length of time the investigation had been pending against her compared to Wyeth's investigation into, and apparent resolution of, Mr. Cleveland's misconduct; and

      F.      Defendant Monovich now was preventing Susan from performing all of her job duties, including, without limitation, demanding to be present whenever Susan sought to interview prospective candidates for promotion and limiting Susan's exposure to the area and corporate office.

30. In approximately September 2006, Susan received an unfair mid-year performance review for the first time in her career at Wyeth.

31. Susan received this unfair performance review from Defendant Monovich, based on false and biased information that was not reflective of Susan's true performance and standing.

32. On September 12, 2006, Susan received a "warning letter" from Defendant Monovich and Wyeth which contained false and biased information that was not reflective of Susan's true performance and standing and provided in relevant part:

      A.      "[T]he concerns set forth in this warning letter will be addressed in and will impact your 2006 Performance Appraisal"; and

      B.      "The highest rating you can receive on your 2006 Performance Appraisal is a three ('At Expectations')."

33. This warning letter adversely effected Susan's compensation package at Wyeth and her future career opportunities at Wyeth.

34. On multiple occasions, Susan protested her receipt of this performance review and "warning letter" to no avail.

35. Based on Wyeth's conduct, on October 13, 2006, Wyeth constructively discharged Susan and forced her to leave a job she loved.

36. On or about June 12, 2007, Susan filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Wyeth.

37. On or about December 11, 2007, the EEOC issued Susan a "right to sue" letter.

## COUNT I
### (Sex Discrimination– Title VII)

38. Susan adopts by reference all preceding paragraphs.

39. At all times herein, Susan was an employee and Wyeth her employer, covered by, and within, the meaning of Title VII.

40. In 2006, Wyeth, <u>inter alia</u>, based on false and biased information and a discriminatory investigation:

    A. Provided to Susan with an unfair performance review;

    B. Issued Susan a "warning letter"; and

    C. Denied or ignored her requests for fair treatment per Wyeth's policy of assurance of fair treatment.

41. Wyeth treated male employees differently than, and/or more favorably than, Susan.

42. Wyeth treated male managers who engaged in conduct contrary to Wyeth's policies and practices differently than, and/or more favorably than, Susan.

43. Susan's gender was a determining factor in Wyeth's decisions to discipline and sanction Susan.

44. Wyeth constructively discharged Susan based on its illegal conduct in violation of Title VII.

45. Wyeth's actions and misconduct were intentional, in deliberate disregard of Susan's rights and sensibilities.

46. Wyeth's actions and misconduct were severe and/or pervasive.

## COUNT II
### (Sex Discrimination - ELCRA)

47. Susan adopts by reference all preceding paragraphs.

48. At all times herein, Susan was an employee and Defendants her employer, covered by, and within, the meaning of the ELCRA.

49. In 2006, Defendants, <u>inter alia</u>, based on false and biased information and a discriminatory investigation:

    A. Provided to Susan with an unfair performance review;

    B. Issued Susan a "warning letter"; and

    C. Denied or ignored her requests for fair treatment per Wyeth's policy of assurance of fair treatment.

50. Defendants treated male employees differently than, and/or more favorably than, Susan.

51. Defendants treated male managers who engaged in conduct contrary to Wyeth's policies and practices differently than, and/or more favorably than, Susan.

52. Susan's gender was a determining factor in Defendants' decisions to discipline and sanction Susan.

53. Defendants constructively discharged Susan based on its illegal conduct in violation of the ELCRA.

54. Defendants' actions and misconduct were intentional, in deliberate disregard of Susan's rights and sensibilities.

55. Defendants' actions and misconduct were severe and/or pervasive.

## **COUNT III**
### **(Breach of Contract/Legitimate Expectations)**

56. Susan adopts by reference all preceding paragraphs.

57. Wyeth Policy 511 compels a Wyeth employee who believes another Wyeth employee violated Policy 511 to not remain silent. As Policy 511 states in relevant part:

> Notify your supervisor or other management about compliance concerns. If you feel the situation was not resolved or if you feel that it is in your best interest or in the best interest of the company, call the Compliance Connection. The Compliance Office will investigate your concerns, and you do not have to give your name when you call. **You will never be penalized for reporting compliance-related concerns**. (Emphasis added)

58. Based on various written and oral statements and other conduct by Wyeth's authorized agents, Wyeth created legitimate expectations for Susan that:

  A. Wyeth would conduct a full and fair investigation into Mr. Cleveland's violations of federal law and/or Wyeth policies and practices;

  B. Wyeth would conduct a full and fair investigation into Mr. Cleveland's false allegations that Susan had violated federal law and/or Wyeth policies and practices;

  C. Wyeth would conduct a full and fair investigation into the reasons why Mr. Cleveland may have falsely accused Susan of mistreating him and/or violating federal law and/or Wyeth policies and practices;

  D. Wyeth would honor its promises to treat Susan fairly;

      E.    Wyeth would honestly and in good faith exercise its discretion with regard to disciplining Susan;

      F.    Wyeth would not penalize Susan for reporting compliance related violations by Mr. Cleveland;

      G.    Wyeth would not retaliate against Susan for reporting compliance related violations by Mr. Cleveland; and/or

      H.    Wyeth would not discriminate against Susan for reporting compliance related violations by Mr. Cleveland.

59.    Susan relied upon these various written and oral statements and other conduct by Wyeth.

60.    As a result of Wyeth issuing Susan an unfair performance review and/or "warning letter" disciplining her, Wyeth breached the express or implied contractual promises described above.

## COUNT IV
**(Public Policy Tort)**

41.    Susan adopts by reference all preceding paragraphs.

42.    Federal law prohibits the marketing of a drug for an "off-label" use. See 21 U.S.C. § 360aaa.

43.    "Off-label" use refers to the practice of prescribing a drug in dosages, or for treatment, other than those expressly approved by the FDA.

44.    Susan engaged in a protected activity and/or acted in accordance with her right or duty under federal law, when she reported to her supervisor, and to Wyeth during a subsequent investigation, that Mr. Cleveland had engaged in numerous violations of federal law, inter alia, by:

      A.    Proactively initiating conversations with a Wyeth customer regarding the a Wyeth trial drug called Exiria which had yet to receive FDA approval;

       B.      Proactively initiating conversations with a Wyeth customer regarding a study that was not approved by Wyeth's Copy Clearance Committee for public disclosure or discussion during a sales call; and

       C.      Promoting to a Wyeth customer that he prescribe dosage amounts of Effexor XR, a Wyeth drug, in excess of the FDA approved dosage levels listed in the prescribing information.

45. Susan engaged in a protected activity and/or acted in accordance with her right or duty under federal law, when she refused to violate the law by not remaining silent about Mr. Cleveland's conduct and/or by refusing to falsify Wyeth documents indicating she was not aware of any violations of federal law or regulations.

46. Despite engaging in protected activity, Wyeth disciplined Susan by issuing her a "warning letter" and/or provided her with a negative and/or unfair performance review.

## **DAMAGES**

61. As a direct and proximate result of Wyeth's unlawful employment practices and tortious acts, Susan has suffered the indignity of discrimination, harassment, retaliation, severe humiliation, injury to her feelings, loss of professional standing and status in the community, irreparable harm to her reputation, and invasion of her right to be free from discrimination and/or retaliation.

62. As a further direct and proximate result of Wyeth's unlawful employment practices and tortious acts, Susan has suffered personal injuries including, but not limited to, extreme mental anguish, outrage, severe anxiety about her future and his ability to support himself, harm to her employability and future opportunity for increased earning capacity and promotions, embarrassment and humiliation among her friends and co-workers, undermining of her self-esteem and motivation, disruption of her personal life, physical injuries, the long-

term stigma to her career resulting from her mistreatment and/or protesting her mistreatment, the stigma from having sued her employer, and the loss of enjoyment of the ordinary pleasures of everyday life.

63.  As a direct and proximate result of Wyeth's unlawful employment practices and tortious acts, Susan has lost career advancement opportunities and has lost or will continue to suffer wage, bonus and fringe benefit losses.

## **RELIEF REQUESTED**

Plaintiff SUSAN GOLDFADEN respectfully demand this Court order the following equitable and legal relief:

- A. Award Susan full compensatory damages for her economic and non-economic damages in an amount to render her whole from this unlawful conduct.

- B. Award Susan exemplary and/or punitive damages for Wyeth's malicious conduct and/or reckless indifference to Susan's rights in an amount to render her whole from this unlawful conduct.

- C. Issue a preliminary and permanent injunction prohibiting Wyeth from further acts of discrimination and/or retaliation.

- D. Award Susan the costs of litigation, including reasonable attorney and witness fees, pursuant to applicable federal state law; and

- E. Any other additional relief that is appropriate and just.

Respectfully submitted,

MICHAEL C. CURHAN, ESQ.

By: /s/ Michael C. Curhan
MICHAEL C. CURHAN (P36354)
Attorney for Plaintiff
3910 Telegraph Road, Suite 200
Bloomfield Hills, Michigan 48302
(248) 593-5000

DATED: December 2, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2008, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

/s/Michael C. Curhan
MICHAEL C. CURHAN (P36354)
Attorney for Plaintiff
3910 Telegraph Road, Suite 200
Bloomfield Hills, Michigan 48302
mcurhan@lipsonneilson.com
(248) 593-5000

Dated: December 2, 2008